**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LATONYA T. E. B.,

                              Plaintiff,

          v.                                        5:20-CV-462
                                                    (CFH)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

**APPEARANCES:**                      **OF COUNSEL:**

Law Offices of Kenneth Hiller, PLLC    JUSTIN M. GOLDSTEIN, ESQ.
600 North Bailey Avenue, Ste. 1A       KENNETH R. HILLER, ESQ.
Amherst, New York 14226
Attorneys for plaintiff

Social Security Administration         AMELIA STEWART, ESQ.
J.F.K. Federal Building, Rm. 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER

     Plaintiff Latonya T. E. B.[1] brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of the decision by the Commissioner of the Social Security

Administration ("Commissioner," "SSA," or "defendant") denying her application for

disability insurance benefits and supplemental security income. See Dkt. No. 1.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

("Compl.").[2]  Plaintiff moves for a finding of disability, and the Commissioner cross

moves for judgment on the pleadings.  See Dkt. Nos. 12, 16.  For the following reasons,

the determination of the Commissioner is affirmed.

## I.  Background

On March 15, 2015, plaintiff protectively filed a Title II application for disability

and disability insurance benefits as well as a Title XVI application for supplemental

security income, alleging disability beginning on September 28, 2013.[3]  T 299-309.[4]

The applications were denied on June 17, 2015.  See id. at 122-35.  Plaintiff filed a

written request for a hearing.  See id. at 171-72.  On March 30, 2017, a hearing was

held before Administrative Law Judge ("ALJ") John P. Ramos where plaintiff appeared

with a non-attorney representative.  See id. at 77-97.  On April 27, 2017, the ALJ issued

a decision denying plaintiff's application.  See id. at 47-53.  The Appeals Council,

following plaintiff's request for review, vacated the April 27, 2017, decision and

remanded to the ALJ for further proceedings.  See id. at 151-54.

Plaintiff appeared before ALJ Ramos for a second hearing on January 3, 2019,

represented by a non-attorney representative.  T at 59-76.  On February 12, 2019, ALJ

Ramos issued a decision denying plaintiff's application.  See id. at 15-25.  The Appeals

Council denied plaintiff's request for review, making the ALJ's decision the final

---

[2] The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636 (c), Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 73, N.D.N.Y. Local Rule 72.2 (b), and General Order 18.

[3] Plaintiff later amended her alleged onset date to February 14, 2016

[4] The Court will cite the administrative transcript as "T [page number]."  The Court will cite the pagination that appears in the bottom right-hand corner of the administrative transcript.  Citations to the parties' submissions will be to the pagination generated by the Court's filing system, located at the header of each page.

determination of the Commissioner.  See id. at 1-6.  Plaintiff commenced this action on April 23, 2020. See Compl.

## II. Standards of Review

### A.  Substantial Evidence Standard

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied

and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. Discussion

#### A. ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since February 14, 2016, the amended alleged disability onset date.  <u>See</u> T at 18.  At step two, the ALJ found that plaintiff had the following severe impairments: cervical spine degenerative disc disease, lumbar spine degenerative disc disease, right shoulder degenerative joint disease, and morbid obesity. <u>See</u> <u>id.</u>  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  <u>See</u> <u>id.</u> Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant should not do any constant bending, reaching or turning of her head.  The claimant should be permitted to change position from sitting to standing and from standing to sitting after thirty minutes.

<u>Id.</u> at 19.

At step four, the ALJ determined that plaintiff was capable of performing past relevant work as a telephone service operator and customer service representative. <u>See</u> T at 24.  Thus, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, since the alleged disability onset date.  <u>See</u> <u>id.</u> at 25.

#### B. Arguments

Plaintiff argues that the ALJ's decision is not based on substantial evidence.  <u>See</u> <u>generally</u> dkt. no. 12.  Specifically, plaintiff contends that the ALJ erred in failing to

6

(1) find a greater restriction on her ability to reach, (2) properly weigh and assess several medical opinions limiting plaintiff to part-time work, and (3) develop the record by obtaining medical documents that were mentioned in treatment notes within the record but not included in the record.  See id.

In opposition, defendant argues that substantial evidence supports the ALJ's RFC assessment.  See Dkt. No. 16.  Defendant contends that record opinions stating that plaintiff was limited to working two days per week or part-time work were not entitled to greater weight as (1) this is an issue reserved to the Commissioner; (2) the opinions were rendered for the purpose of No Fault Insurance, which applies a standard that differs from that used by the Social Security Administration ("SSA") to assess disability; (3) the opinions were conclusory, and (4) plaintiff's testimony that she had been working up to thirty-hours per week contradicted such opinions.  See id. at 6-8.  As for the ALJ's findings on reaching, defendant argues that plaintiff misinterprets the ALJ's decision as the ALJ concluded that plaintiff could not constantly reach, and that his assessment that plaintiff could frequently reach was supported by substantial evidence. Id. at 15.  Finally, defendant argues that the ALJ did not have duty to further develop the record because (1) he asked plaintiff's representative if the record was complete, and (2) there was no obvious gap in the record.  See id. at 18-19.

### C. Analysis

### 1.  Opinion Evidence

Plaintiff argues that the ALJ erred in his assessment of several medical opinions. First, she contends that the ALJ improperly accorded PA Ryan Bowser's opinion "little

weight" and Dr. Mills'[5] opinion "some weight because (1) the opinions were rendered for the purpose of No Fault Insurance; (2) the ALJ failed to "apply the regulatory factors and provide factually supported reasons" for the weights accorded to these opinions; and (3) the ALJ failed to seek "a more detailed statement." See Dkt. No. 12 at 16, 18-19. Second, plaintiff argues that the ALJ "failed to weigh or summarize" several additional opinions "indicating that Plaintiff could perform a reduced range of sedentary work on a part time basis," including that of Dr. Mills, Dr. Buchanin, Dr. Ubagharaji, Dr. Singh, Dr. Small, Dr. Garg, Dr. Gaber, Dr. Nijar, Dr. Wani, and Physical Therapist Ross. See id. at 16.

Defendant contends that the ALJ did not reject the opinions solely because they were rendered for purposes of No Fault Insurance, but because (1) the opinions limiting plaintiff to working two days a week were based on plaintiff's subjective complaints; (2) the ALJ's opinion that plaintiff could perform full-time work is supported by consultative examiner Dr. Lorensen's opinion; (3) the ALJ's assessment of Dr. Mills and PA Bowser was proper as: (a) these were not treating physicians, and, thus, not entitled to controlling weight; (b) the ALJ accounted for Dr. Mills' opinioned limitations within the RFC; (c) the ALJ limited plaintiff to sedentary work; and (d) PA Bowser did not provide a complete function-by-function assessment and is not an acceptable medical source. See Dkt. No. 16 at 9-15.

### a.  PA Bowser

---

[5]  Dr. Mills is an independent medical examiner who examined plaintiff for purposes of No Fault Insurance.

Addressing first plaintiff's argument that the ALJ improperly accorded PA Bowser's opinion little weight because it was rendered for No Fault Insurance purposes, dkt. no. 12 at 16, the Court notes that the opinion demonstrates that the ALJ did not reject PA Bowser's opinion <u>solely</u> because it was generated for the purpose of obtaining No Fault benefits.  It is well settled that an opinion rendered for the purpose of workers' compensation or No Fault insurance benefits is not binding on the ALJ as the standards used in assessing those benefits differ from those applied to determine whether a claimant is disabled and entitled to social security benefits. <u>See</u> <u>generally</u> <u>Naumov v. Comm'r of Soc. Sec.</u>, 20-CV-3180 (GRB), __ F. Supp. 2d ___, 2021 WL 2144762, at *2 (E.D.N.Y. May 21, 2021) ("The standards for disability under workers' compensation programs are entirely distinguishable from those under disability insurance benefits."). Indeed, "'[a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled . . . is based on its rules . . . . We must make a disability . . . determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.'" <u>Mortise v. Astrue</u>, 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) (quoting 20 C.F.R. § 404.1504). Thus, as different standards are applied, "an ALJ may properly conclude that such opinions do not provide much guidance in terms of whether a claimant's ability to work qualifies him [or her] for Social Security benefits."  <u>McNerney v. Comm'r of Soc. Sec.</u>, No. 1:18-CV-1073-TPK, 2019 WL 5558392, at *5 (W.D.N.Y. Oct. 29, 2019) (citing <u>Ramirez v. Astrue</u>, 12-CV-6221, 2014 WL 2520914, at *10 (W.D.N.Y. Mar. 28, 2014)).

The ALJ's decision to accord PA Boswer's opinion "little weight" is supported by substantial evidence.  PA Bowser stated that plaintiff could work "with a 25%

impairment, no lifting greater than 5 pounds, no overhead lifting." T at 1311. Although plaintiff generally argues that the ALJ did not provide "valid reasons" for rejecting PA Bowser's opined limitations or did not "apply the regulatory factors" when making his assessment, the Court disagrees. Dkt. No. 12 at 16, 19. The ALJ reviewed PA Bowser's treatment notes in detail, including his review of plaintiff's X-ray and MRI studies, physical examinations, plaintiff's complaints, and diagnoses. See T at 20-21, 24. In addition to noting that PA Boswer rendered his opinion that plaintiff "was able to work with a twenty-five percent impairment, no lifting greater than give pounds and no overhead lifting" for the purpose of "reporting to No Fault Insurance Carrier," the ALJ also noted that PA Bowser (1) is not an acceptable medical source, (2) presented vague opinions regarding plaintiff's limitations, and (3) set forth opinions that were "not based upon a complete function-by-function analysis." T at 24. Additionally, the ALJ observed that PA Boswer was examining plaintiff for shoulder pain, and "[d]id not provide a thorough assessment related to the claimant's other impairments." Id.

To the extent plaintiff suggests that the ALJ was required to detail all of the various "regulatory factors," the ALJ explicitly remarked on many of these factors. He noted that PA Bowser was not an acceptable medical source,[6] and he reviewed the nature of the treatment relationship, noting that PA Bowser "examined the claimant on many occasions," and going through the various treatment records, including examination findings and imaging studies. T at 24. Thus, the ALJ reviewed pertinent regulatory factors and provided the specific reasons for his finding. The ALJ explained

---

[6] Plaintiff's arguments regarding PA Bowser fall under the heading of "Treating Physician Rule." Dkt. No. 12 at 16. However, as PA Bowser is a PA, he is not considered a treating physician and is not an acceptable medical source under the regulations in place at the time; thus, his opinion was not entitled to controlling weight.

the reasons behind why he gave PA Bowser's opinion little weight: he was not an acceptable medical source, his findings were vague and unsupported by a function-by-function assessment, his statements on plaintiff's ability to work were rendered for the purpose of No Fault Insurance, and he did not appear to be treating plaintiff for conditions beyond her shoulder pain.  See id.  Plaintiff does not point to a specific factor or factors she believes the ALJ improperly failed to lay out; however, to the extent the ALJ did not address all of the regulatory factors explicitly, "[t]he ALJ is not required to spell out precisely how each and every one of the regulatory factors applies to a given provider's opinion as long as the record reflects that he properly applied the substance of the rule." Tahira H. v. Comm'r of Soc. Sec., No. 5:18-CV-1120, 2020 WL 42823, at *8 (N.D.N.Y. Jan. 2, 2020) (citing Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order)).  As, the ALJ sufficiently explained his basis for providing PA Bowser's opinion little weight, the record demonstrates that he "properly applied the substance of the rule."  Id.  Thus, there is no basis for remand on this ground.

To the extent that plaintiff argues that the ALJ had the duty to develop the record by obtaining from PA Bowser a function-by-function assessment, the Court disagrees.  Plaintiff characterizes the ALJ as "rejecting" PA Boswer and Dr. Mills' opinions for "lack of detail," dkt. no.12 at 19, the decision demonstrates that an absence of a function-by-function assessment was one of several reasons the ALJ provided in explaining the weight accorded to these opinions.  Unlike in the cases plaintiff cites, there is no gap in the record nor suggestion that the ALJ relied on his interpretation of raw medical data.  See Dkt. No. 12 at 19 (citing Jessica B. v. Comm'r of Soc. Sec., 3:18-CV-424 (FJS), 2019 WL 3494356, at *4 (N.D.N.Y. Aug. 1, 2019); Mecklenburg v.

11

Astrue, No. 07-CV-760, 2009 WL 4042939, at *6 (W.D.N.Y. Nov. 19, 2009)).  The

decision demonstrates that ALJ relied on consultative examiner Dr. Lorensen's

examination concluding that plaintiff had "moderate" restrictions on lifting, reaching, and

bending. T at 23.  Although a one-time consultative examiner, Dr. Lorensen is an

acceptable medical source whose opinion may be relied on when consistent with

medical evidence in the record.  See Kya M. v. Comm'r of Soc. Sec., 506 F. Supp. 3d

159, 164 (W.D.N.Y. 2020) (citing Guerra v. Comm'r of Soc. Sec., No. 1:16-CV-

00991(MAT), 2018 WL 3751292, at *7 (W.D.N.Y. Aug. 7, 2018), aff'd, 778 F. App'x 75

(2d Cir. 2019) ("An ALJ has discretion to weigh the opinion of a consultative examiner

and attribute the appropriate weight based on his review of the entire record.") and

Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2006) (summary order) ("An ALJ may give

the opinion of a consultative examiner 'great weight' when it is consistent with the

underlying medical evidence.")).  "'It is also generally accepted that a consultative

examiner's opinion may be accorded greater weight than a treating source's opinion

where the ALJ finds it more consistent with the medical evidence.'"  Kya M., 506 F.

Supp. 3d at 164 (quoting Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 577

(S.D.N.Y. 2018)).

        The ALJ limited plaintiff to sedentary work with no constant bending, reaching, or

turning.  T at 19.  As moderate restrictions in these areas are not necessarily

inconsistent with sedentary work, the ALJ appropriately incorporated moderate

restrictions in these areas into his RFC.  See, e.g., Harris v. Comm'r of Soc. Sec., No.

09-CV-1112, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011) report and

recommendation adopted, 2011 WL 3652201 (N.D.N.Y. Aug. 17, 2011).  Thus, the

Court finds no basis for remand surrounding the ALJ's assessment of PA Bowser's opinion.

### b.  Dr. Mills

Plaintiff also argues that the ALJ improperly assessed the opinion of consultative examiner Dr. Mills as PA Bowser's opinion that plaintiff is limited to part-time, sedentary work is consistent with Dr. Mills' opinion.  See Dkt. No. 12 at 16.  Plaintiff suggests that the ALJ failed to "apply the regulatory factors" or "provide factually supported reasons for the weight afforded" to Dr. Mills' opinion.  Dkt. No. 12 at 19 (citing SSR 06-03p).[7]

On January 24, 2017, Dr. Mills performed an examination of plaintiff relating to her No Fault insurance claim.  See T at 667-73.  Dr. Mills concluded that plaintiff had a "mild orthopedic disability," but could perform her usual activities of daily living, excepting that she could not lift over 25 pounds or perform "repetitive overhead activities."  Id. at 672.  Dr. Mills concluded that plaintiff could "continue to work 16-24 hours per week."  Id.  Although Dr. Mills found restrictions for lifting and overhead, he also opined that plaintiff's impairment was temporary and expected to "stabilize with additional recommended treatment."  Id. at 671-72.  The ALJ accorded this opinion "some weight," noting that Dr. Mills performed a thorough examination.  Id. at 24.  Even if the Court assumes that ALJ erred in his assessment of Dr. Mills' opinion, any error would be harmless as the ALJ's RFC adequately accounted for lifting up to twenty-five pounds and no constant reaching.  See Sova v. Colvin, 7:13-CV-0570, 2014 WL 4744675, at *8 (N.D.N.Y. Sept. 23, 2014).  Insofar as the ALJ declined to credit Dr.

---

[7]   The Court notes that SSR 06-03p was rescinded, effective March 27, 2017.  However, as plaintiff filed her claim prior to the effective date, SSR applies.

Mills' statement that plaintiff could continue work 16-24 hours per week, for the reasons set forth above, the ALJ did not commit reversible error in declining to credit what is essentially a disability assessment made pursuant to standards that differ from those used to determine disability for Social Security purposes. See supra at 8-9.

### c. Consultative Examiner Elke Lorensen, M.D.

Plaintiff argues that Consultative Examiner Lorensen's opinion, which the ALJ accorded "significant weight," does not suffice to contradict PA Boswer's opined limitations nor amount to substantial evidence supporting the RFC because (1) it predates the amended alleged onset date, and (2) "all medical opinions from the relevant time period support greater limitations and support the ability to perform only part time work." Dkt. No. 12 at 16. The Court rejects this argument for the reasons set forth in defendant's brief. See Dkt. No. 16 at 17. To that reasoning, the Court adds the additional analysis, set forth below.

"[A] medical opinion is not necessarily stale simply based on its age." Dronckowski v. Comm'r of Soc. Sec., No. 1:18-CV-0027 (WBC), 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019) (citing Biro v. Comm'r of Soc. Sec., 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018)). An ALJ "may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date." Sabrina L. o/b/o/ T.L v. Berryhill, 1:17-CV-542, 2018 WL 6521760, at *9 (W.D.N.Y. Dec. 12, 2018) (quoting Pirtle v. Astrue, 479 F.3d 931, 934 (8th Cir. 2007)); Camille v. Colvin, 652 F. App'x 25, 29 n.4 (2d Cir. 2016) (summary order) (noting that while there is no "unqualified rule that a medical opinion is superseded by additional material in the record," an opinion based

14

on an incomplete record may be considered stale where subsequent evidence differs materially from earlier evidence).

As defendant points out, the ALJ did not rely solely on Dr. Lorensen's opinion in reaching his RFC; rather, he accorded "some weight" to Edward Mills, M.D.'s opinion.  T at 24.  Dr. Mills performed a consultative examination of plaintiff on January 24, 2017, after the alleged amended onset date.  See id. at 666-73.  Dr. Mills concluded that plaintiff could "continue to work 16-24 hours per week with limitations only on no repetitive overhead activities and no lifting over 25 pounds."  Id. at 672.  The ALJ accorded Dr. Mills' opinion "some weight" as it was "rendered after a thorough examination of the claimant, but noted that the opinion was provided as part of a No Fault Insurance evaluation, based on criteria differing from Social Security regulations."  Id.  The ALJ concluded that Dr. Mills' assessment of working sixteen to twenty-four hours per week was "not clearly explained in terms of functional limitations and inconsistent with the finding of mild orthopedic impairment supported by the complete record of medical evidence."  Id.

Even according Dr. Mills opinion "some weight," together with Dr. Lorensen's evaluation, these opinions suffice to support the ALJ's RFC.  It is clear that the ALJ accorded less weight to Dr. Mills opinion in part due to it being completed for No Fault Insurance – which was a reasonable determination, for the reasons discussed above – and because the part-time work restriction was not explained and inconsistent with other record evidence.  However, it appears the ALJ accepted Dr. Mills' assessment regarding no repetitive overhead reaching activities and lifting over twenty-five pounds as these restrictions are not inconsistent with the ALJ's RFC.  In limiting plaintiff to

15

sedentary work with <u>no</u> constant reaching, the ALJ concluded that plaintiff could perform past relevant work as a telephone answering service operator (DOT 235.662-026) and customer service representative (DOT 249.362-036).[8]  The vocational expert ("VE") testified that, although the DOT for telephone service operator indicates that it requires constant reaching, because the job no longer requires use of a cord and switchboard, but a computer and phone, the reaching requirement is only "frequent."  T at 71. Discussing the customer service representative position, the VE testified that a person who could not constantly each in any direction with either upper extremities could perform the roles of customer service representative and answering service operator as generally performed and as actually performed by plaintiff "with the update, and definition that [the VE] provided based on [the VE's] experiences in the labor market, [the VE's] education and training, and [the VE's] knowledge of how the job is performed today, in that the reaching would be frequent."  <u>Id.</u> at 73.  As the ALJ concluded only that plaintiff could not constantly reach, and Dr. Lorensen and Dr. Mills' opinions support a conclusion that plaintiff could perform jobs that require frequent reaching, the ALJ's reliance on Dr. Lorensen's opinion is not reversible error.

Plaintiff opines that Dr. Lorensen's opinion and "some weight" to Dr. Mills' opinion should not contradict PA Bowser's opinion as several treating providers supported PA Bowser's opinions that plaintiff is limited to working two days per week.  <u>See</u> Dkt. No. 12 at 17-18.  However, as set forth above, <u>supra</u> at 6-8, the various treatment notes plaintiff cites, although provided by treating providers, were (1) rendered for purposes other

---

[8]  Plaintiff cites the DOT for Order Clerk (DICOT 249.362-026 (G.P.O., 1991 WL 672320).  <u>See</u> Dkt. No. 12 at 21.  However, the ALJ concluded that plaintiff could perform the role of customer service representative (DICOT 249.362-036).  The citation to the description for Order Clerk appears to be scrivener's error.

than social security disability, and, thus did not apply the same standards; and (2) based on plaintiff's statement that she could only work two days per week, rather than on a physical function-by-function examinations.[9]  This Court concluded above that the ALJ reasonably accorded less weight to those records concluding that plaintiff could work two days per week because they were assessed for the purpose of no fault disability, which uses differing standards than those used by the SSA.  See supra at 6-8.

Insofar as plaintiff argues that the ALJ erred insofar as he failed to discuss[10] treatment notes from various treating providers that similarly concluded that plaintiff was limited to working two days per week, this argument lacks force for three reasons.  First, these treatment notes essentially render a disability finding for another agency and are not dispositive on the Commissioner.  See 20 C.F.R. § 416.927(d)(1); Mortise v. Astrue, 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) (Kahn, J.) ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner.").  Indeed, as defendant points out, the treatment notes plaintiff highlights do not appear to reflect medical conclusions based on an examination, rather they are reflective plaintiff's own reporting of her current working level and/or complaints of pain.  The reports merely state that plaintiff is to "continue" to work two days per week or that she "currently" works two days per week.  T at 952-53, 985, 988, 1178, 1183, 1193, 119.   Finally, these opinions stating that plaintiff is limited to working two days per week mirror

---

[9]  Plaintiff sets forth similar arguments regarding Physician Therapist Ross within the Treating Physician Rule section of her brief, a physical therapist is also not an acceptable medical source, and, thus, the treating physician rule does not apply.  See Dkt. No. 12 at 17; 20 C.F.R. § 404.1513(a); see also Diaz v. Shalala, 59 F.3d 307, 312-314 (2d Cir.1995).

[10]  The Court notes that the ALJ did discuss at least some of these records within his decision.  See T at 20 (citing Dr. Garg's treatment note, T at 200).

several others in the record similarly concluding that plaintiff was limited to working two days a week.  Thus, the ALJ's failure to explicitly discuss the remainder of the opinions within his decision does not amount to reversible error.

## 2.  Reaching

Plaintiff argues that the ALJ erred in concluding that plaintiff could constantly reach as "the ALJ previously found Plaintiff [could] only occasionally reach with her right upper extremity in the decision prior to the Appeals Council's remand order," there is no evidence of improvement since the ALJ rendered his first decision, and the Vocational Expert ("VE") testified that there would be no sedentary work available if the individual were limited to occasional reaching.  Dkt. No. 12 at 21.  Plaintiff argues that the ALJ did not point to "any evidentiary support of the ability to reach constantly," meaning is finding "was based upon the interpretation of the raw medical evidence" and plaintiff's activities of daily living, which fails to amount to substantial evidence.  Id. at 21-22.  Plaintiff also argues that the ALJ erred in assigning "significant weight" to consultative examiner's Dr. Lorensen's opinion, as: (1) this opinion predated the amended onset date; (2) her finding of moderate limitations in bending, lifting, and reaching is "vague"; and (3) because the ALJ "did not identify another opinion or anything in the record supporting the manipulative abilities indicated in the RFC finding," his assessment as it relates to plaintiff's reaching limitations was not supported by substantial evidence.  Id.

Defendant argues that plaintiff misinterprets the ALJ's decision.  Defendant argues that the ALJ concluded that plaintiff could *not* constantly reach, meaning that she could perform less than constant reaching.  See Dkt. No. 16 at 14.  Although the

ALJ does not explicitly state the level of reaching plaintiff could perform, since he stated that plaintiff could not constantly reach, it is reasonably follows that the ALJ concluded that plaintiff could perform next level of reaching, frequent reaching. "Frequent" is defined as 'occurring from one-third to two-thirds of the time" in the course of an eight-hour workday[.]'" Elizabeth H. v. Comm'r of Soc. Sec., No. 3:19-CV-1020 (CFH), 2020 WL 4501495, at *5 (N.D.N.Y. Aug. 5, 2020) (quoting SSR 83-10, 1983 WL 31251, at *5, 6 (S.S.A. Jan. 1, 1983)). Further, defendant argues that the ALJ's assessment of plaintiff's reaching is supported by Dr. Lorensen's and Dr. Mills' opinions. See id. at 16. Finally, defendant argues that the ALJ had no duty to "credit" his April 2017 decision that plaintiff could occasionally reach because the Appeals Council vacated this decision "and directed the ALJ to give further consideration to Plaintiff's RFC and issue a *new* decision." Id. at 17 n.8.

As discussed above, the ALJ reasonably relied on the opinion of Dr. Lorensen, together with Dr. Mills, to conclude that plaintiff could frequently reach. The VE testified that plaintiff's past relevant work of telephone answering service operator and customer service representative could be performed by someone who could frequently reach; thus, the ALJ's RFC as it relates to reaching is supported by substantial evidence. The Court further agrees with defendant's argument that, because the Appeals Council vacated the ALJ's original decision, T at 48-53, the ALJ was under no duty to credit the findings therein.

### 3. Failure to Develop Record

Plaintiff argues that the ALJ failed to satisfy his duty to develop the record as medical records referenced a December 2017[11] functional capacity evaluation and various "insurance/work disability forms" that were not made a part of the administrative transcript.  See Dkt. No. 12 at 18.  Plaintiff contends that, because the ALJ did not credit Dr. Mills' and PA Bowser's opinions because of a lack of a function-by-function assessment, the ALJ's failure to obtain the December 2017 evaluation and the insurance or work disability forms is reversible error.  See id. at 24-25.  Plaintiff opines that the ALJ's "reliance upon gaps in the record and arbitrary rejection of a treating other source's medical opinion" amounts to error requiting remand for further proceedings "based upon a completely developed record."  Dkt. No. 12 at 25.

Defendant argues that the ALJ satisfied his burden by inquiring of plaintiff's representative at the hearing -- "long after the evidence in question was created" -- if the record was complete.  Dkt. No. 16 at 18.  In addition, defendant contends that, although plaintiff argues that the ALJ rejected Dr. Mills and PA Boswer's opinions due to the lack of a functional analysis, the ALJ concluded that Dr. Mills provided a "thorough examination" of plaintiff and his RFC reflected Dr. Mills' opined limitations.  Id. at 19.  Further, defendant argues that the absence of the physical therapist's functional evaluation is not an "obvious gap" in the record as the "ALJ had the benefit of two functional capacity evaluations completed by physicians."  Id.  Finally, defendant asserts that plaintiff's argument that the ALJ would have decided differently had the functional evaluation and insurance paperwork been included in the record is speculative as "the

---

[11]  Plaintiff provides that the record contains a treatment note from Dr. Garg, wherein he noted a December 26, 2017, functional capacity evaluation that Physical Therapist Susan Giegold completed. See Dkt. No. 12 at 23-24.

record already contained multiple statements that Plaintiff could only work two days per week, and the ALJ reasonably rejected that notion."  Id.

The Court concludes that the ALJ did not commit reversible error in declining to reach to sua sponte obtain a December 2017 functional capacity evaluation and insurance/work disability forms referenced in treatment notes in the record, but not contained within the record.  Plaintiff provides that the record contains records from (1) Dr. Conkright and Dr. Singh "indicating that 'insurance/work disability forms' were completed on August 22, 2017 and March 8, 2018" (Dkt. No. 12 at 25 citing T at 1193, 1212); (2) Dr. Ubagharaju and Dr. Buchanan on December 7, 2016 that "[p]aperwork for her employment completed" (Dkt. No. 12 at 25 citing T at 957), (3) Dr. Nijjar and Dr.Wani, on February 6, 2017, "that a letter was provided for insurance regarding her ability to work only two days per week" (Dkt. No. 12 at 25 (citing T at 988)).

Although the ALJ retains a duty to develop the record where a claimant appears with representation, the ALJ reasonably met this burden by inquiring of plaintiff's representative whether the record was complete.  See T at 63.  Plaintiff's representative affirmed that the record was complete.  See id.  However, even if the ALJ may have been better served by combing the record to discover the absence of these documents and thereafter seeking the documents from the providers or plaintiff, his failure to explicitly request these documents does not amount to reversible error.  The ALJ did not breach his duty to develop the record because there was no obvious gap in the record. "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek

additional information in advance of rejecting a benefits claim." <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing <u>Perez v. Chater</u>, 77 F.3d 41, 48 2d Cir. 1996)).

Based on plaintiff's own description of these comments, the missing "work/disability forms" appear to be redundant of the many documents in the record plaintiff submitted relating to her No Fault Insurance evaluations.  Plaintiff proposes that if Physical Therapist Giegold's full December 2017 functional capacity evaluation were included in the record, the ALJ would have rendered a different opinion because the ALJ "did not credit the opinions of Dr. Mills and PA Boswer due to the lack of a functional analysis."  Dkt. No. 12 at 24.  Plaintiff contends that the physical therapist's full evaluation would "cure" this deficiency.  <u>Id.</u>  The Court disagrees.  The record already contained a functional capacity evaluation from Physical Therapist Giegold. Moreover, it is unclear how the physical therapist's full functional capacity evaluation would cure the ALJ's concerns about an absence of function-by-function assessments from Dr. Mills and PA Bowser, two entirely different medical providers.  As it does not appear that PT Giegold's full functional capacity evaluation was before Dr. Mills or PA Bowser for review such that it somehow impacted their assessments or that PT Giegold's functional capacity evaluation could supplement the ALJ's concerns about the absence of a basis for Dr. Mills or BA Bowser's conclusions regarding the number of hours per week plaintiff could work, the Court finds unconvincing plaintiff's speculative argument that this document would have altered the ALJ's ultimate disability determination.  Indeed, the ALJ did not conclude that he reached his determination because the record in full lacked a functional capacity evaluation, but that he reached

his assessments of those two medical providers' specific conclusions based (in part) on the fact that they did not perform function-by-function assessments. See T at 24.[12]

In addition, the ALJ committed no error in declining to affirmatively seek these records beyond asking whether the record was complete because there is no gap in the record.  The ALJ reviewed many "insurance/work disability forms" that were available in the record, and insofar as these forms set forth an assessment on plaintiff's ability to work part time, the ALJ concluded that such assessments were of limited force as they were obtained pursuant to an assessment that uses differing standards than those required by the SSA.  As the Court discussed above, that conclusion was not reversible error.


## IV.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that defendant's Motion for Judgment on the Pleadings (Dkt. No. 16) is **GRANTED**, and that the determination of the Commissioner is AFFIRMED; and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

---

[12]  Moreover, as for the December 2017 functional capacity evaluation on was performed by a physical therapist, that provider is not an acceptable medical source. See Dkt. No. 12 at 23-24.  Thus, although the physical therapist's opinion would need to be reviewed and assessed had it been included in the record, it would not be entitled to any heightened degree of weight.  See SSR 06-03p.

Dated: September 3, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge